UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ATHANASIOS DRENIS, et al.,

Plaintiffs,

- against -

ANGELO HALIGIANNIS, et al.,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/25/06

04 Civ. 9263 (RJH)

**MEMORANDUM OPINION
AND ORDER**

This action, and a related action brought by the Securities Exchange Commission,

relate to the operation a hedge fund through which defendant Angelo Haligiannis allegedly

perpetrated a "Ponzi scheme," a species of fraud whereby an investment fund that is

unprofitable uses money from new investors to pay "false profits" to old investors in order

to encourage further investment and sustain the scheme. Plaintiffs, certain limited partners

in the hedge fund, have sued Angelo Haligiannis, the hedge fund, Sterling Watters Group

Limited Partnership ("Sterling Watters Partnership" or the "Partnership"), and its general

partners, Sterling Watters Capital Management, Inc, Sterling Watters, Inc., and Sterling

Watters Capital Advisors, LLC (collectively, the "defrauding defendants") alleging

securities fraud in violation of section 10(b) of the Securities Exchange Act, 15 U.S.C. §

78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, fraud by an

investment adviser, in violation of sections 206(1)–(2) and 217 of the Investment Advisers

Act, 15 U.S.C. §§ 80b-6(1)–(2), 80b-17, and state law causes of action for breach of

contract, breach of fiduciary duty, common law fraud, conversion, unjust enrichment, and

for an accounting.

1

Haligiannis was indicted, fled the jurisdiction and remains a fugitive; in addition Sterling Capital, Sterling Watters, Inc., and Sterling Watters Partnership are all now defunct entities. Faced with this situation, plaintiffs have also sued certain other limited partners in the Partnership, Evanthia Tsagoulis, Michael Capul, Maria Haligiannis, Alex Sklias, Chris P. Pavlatos, Chris B. Pavlatos, Dominique Pavlatos, Marilyn Biasucci, Sloan Bruan, Walter Scott Bruan, Corina Buruiana, Charles Darwish, Peter Derby, Jonathan Gatti, Linda Gatti, Peter Georgatos, Isabella Griffin, Dennis Kirincich, Charles Kyriacou, Anthony Marano, Robert Marini, Frank Michel, Howard Moore, Helene Moore, Stuart Adler, Joseph Ferri, Jr., Robert Schneiner, Linon Home Décor Products, Inc., and Ardantz Associates, LP (collectively, the "false profits defendants") alleging causes of action for fraudulent conveyance, in violation of sections 273 to 276 of New York's Debtor and Creditor law, N.Y. Debt. & Cred. Law §§ 273–76 (McKinney 2001), and seeking relief under section 278 of the same chapter. Specifically, plaintiffs seek to recover transfers of partnership assets to the extent the transfers exceeded each false profit defendant's capital contribution. (*See* Pls.' Opp'n Mem. 9.)

Certain of the false profits defendants have now moved to dismiss [68] [98][1] the claims for fraudulent conveyance against them pursuant to Rules 12(b)(6) and 9(b). Fed. R. Civ. P. 12(b)(6), 9(b). These defendants are Marilyn Biasucci, Michael Capul, Christopher Pavlatos, Christopher B. Pavlatos, Dominique Pavlatos, Corina Buruiana, Peter Derby, Jonathan Gatti, Linda Gatti, Peter Georgatos, Isabella Griffin, Dennis Kirincich, Charles Kyriacou, Anthony Marano, Robert Marini, Howard Moore, Helene Moore, Stuart Adler, Joseph Ferri, Jr., Linon Home Décor Products, Inc., and Ardantz

---

[1] By letter endorsement dated December 15, 2005 [100] the Court ordered that a separately filed motion to dismiss [98] filed by false profit defendant Marilyn Biasucci be joined with the consolidated motion to dismiss [68].

2

Associates, LP (collectively, the "moving defendants"). For the reasons set forth below,

the motion to dismiss is GRANTED.

## BACKGROUND

The following facts relevant to this motion are derived from the First Amended

Complaint ("FAC") and are taken as true for the purposes of this motion.

Sterling Watters Partnership was created in or about 1995 for the stated purpose of seeking

above average economic returns on investments primarily through investing in publicly

traded securities. Instead, the entire arrangement was a Ponzi scheme,[2] whereby

subsequent capital contributions were used to make distributions to prior limited partners.

1. Allegations Underlying Plaintiffs' Claims against the Defrauding Defendants

The facts and circumstances of the alleged fraud perpetrated by the defrauding

defendants is more fully described in the FAC, but a brief recounting of the alleged Ponzi

scheme perpetrated by Haligiannis is appropriate, and follows here.

Investment in the Partnership was limited to ninety-nine limited partners, each of

whom was required to be qualified as an "accredited investor" as defined by the rules

promulgated by the Securities and Exchange Commission. (FAC ¶ 51.) Plaintiffs and the

False Profits Defendants were among those who invested in the Partnership. In March

2000, plaintiffs received an "investor kit" from the defrauding defendants, including a

"Private Placement Memorandum" that included the partnership agreement. (FAC ¶ 56.)

The investor kit contained documents representing, *inter alia*, that the Partnership had

---

[2] "A Ponzi scheme is a scheme whereby a corporation operates and continues to operate at a loss.
The corporation gives the appearance of being profitable by obtaining new investors and using
those investments to pay for the high premiums promised to earlier investors. The effect of such a
scheme is to put the corporation farther and farther into debt by incurring more and more liability
and giving the corporation the false appearance of profitability in order to obtain new investors."
*Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1088 n.3 (2d Cir. 1995) (citation omitted).

3

obtained an annual return of over eighty-six percent in 1999 and a return of over eighty-six percent during the first two quarters of 2000. The investor kit also represented that investments in Sterling Watters had cumulative returns in excess of 1073% between the first quarter of 1996 and the second quarter of 2000. (*Id.*) Ignoring the old saw that "anything too good to be true usually is," plaintiffs and the false profits defendants all entered into Partnership Agreements. (*Id.* ¶¶ 57–63.) Between August 2000 and February 2004, plaintiffs invested, in aggregate, a total of $7,782,910 in the Partnership. (*Id.* ¶ 64.) During this same period, plaintiffs received distributions from the defrauding defendants totaling $732,500, representing roughly ten percent of plaintiffs' total investments in the partnership, and falling far short of the amounts specified in the defrauding defendants' distribution schedule. (*Id.* ¶ 65.) Plaintiffs' remaining investment in the Sterling Watters Partnership, after subtracting these distributions, is $7,050,410. As of June 30, 2004 the capital account balance of Plaintiffs as set forth in their statements was $9,012,685.63. (*Id.* ¶ 66; FAC Ex. D.)

While reporting to investors that its assets had grown by approximately 41.45% for the year, the Partnership in fact suffered over $17 million in trading losses in 2000 alone. Plaintiffs allege that by January 2003, and as a result of mounting trading losses and payments made mainly to the false profit defendants, Sterling Watters had virtually no assets and did virtually no trading whatsoever. (*Id.* ¶ 67.) By the third quarter of 2003, when Sterling Watters's promotional material reported that it had approximately $180 million in assets, the Partnerships' assets allegedly totaled less than $150,000. (*Id.* ¶ 68)

By early 2000, the defrauding defendants allegedly used new contributions almost exclusively to: (i) make distributions to (or to liquidate the interests of) existing limited

partners; or (ii) fund withdrawals made by Angelo Haligiannis for personal expenses. By 2003, the Partnership was only able to make distributions or liquidate its limited partners' interests if it had received corresponding contributions. Beginning in or about 2003, the defrauding defendants began to refuse to make distributions or liquidate plaintiffs' Partnership interests. (*Id.* ¶ 70.)

Most of the various entities named as defrauding defendants in this action are no longer viable corporate entities. Sterling Capital is no longer in existence and is not in good standing under the laws of the State of Delaware as of March 1, 2003; Sterling Watters, Inc. was dissolved by proclamation by the Secretary of State of New York on December 31, 2003; and the Sterling Watters Partnership is no longer in existence and is not in good standing under the laws of the State of Delaware, having been cancelled by the Secretary of State of Delaware on June 1, 1998 for neglect, refusal, or failure to pay its annual taxes. (*Id.* ¶ 77; FAC Ex. H.)

## 2. Allegations Underlying Plaintiffs' Claims against the False Profit Defendants

Not all limited partners lost their shirts in Haligiannis's scheme. Indeed, according to plaintiffs each of the false profits defendants received "distributions" that exceeded each of their respective contributions. (FAC ¶ 80.) These payments were not a return on legitimate investment activity, and the conveyance of these payments to the false profits defendants was not predicated on fair consideration. (*Id.* ¶ 81.) In the aggregate, these payments allegedly exceeded the false profits defendants' contributions by $10,449,176.94, representing a seventy-three percent return above their aggregate contribution. By contrast, plaintiffs have lost nearly ninety percent of their contributions to the Sterling Watters partnership. (*Id.* ¶ 82.)

5

## STANDARD OF REVIEW

In a motion to dismiss under Rule 12(b)(6), the Court "must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995) (citations omitted). "The district court should grant such a motion only if, after viewing plaintiff's allegations in this favorable light, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). In other words, "'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 176 (2d Cir. 2004) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)). Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *accord Eternity Global Master Fund*, 375 F.3d at 176–77.

For purposes of a motion to dismiss, a complaint is deemed to include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Rothman v. Gregor*, 220 F.3d 81, 88–89 (2d Cir. 2000) (citations omitted).

6

When alleging fraud, a plaintiff must comply with Rule 9(b) of the Federal Rules of Civil Procedure, which provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

## DISCUSSION

The moving defendants offer four reasons why the claims for fraudulent conveyance alleged against them should be dismissed. First, defendants contend that plaintiffs' claims are improperly pleaded under the New York Debtor and Creditor Law, N.Y. Debt. & Cred. Law §§ 270–81 (McKinney 2001). Second, they argue that because plaintiffs do not have the status of "creditors" they do not have standing to pursue claims for fraudulent conveyance under Delaware law (or, for that matter, under New York law). Third, defendants claim that plaintiffs' fraudulent conveyance claims are subject to the Rule 9(b) requirement that fraud be pleaded with particularity and that the complaint fails to do so. Finally, defendants contend that even if the fraudulent conveyance claims are well pled, they must be dismissed as premature because an action may not be brought by one limited partner against another for a claim arising out of the partnership until there has been a complete accounting. The Court will address each argument below.

1. Plaintiffs' Fraudulent Conveyance Claims Are Properly Pleaded under New York Law.

A federal court adjudicating supplemental state law claims applies the choice-of-law rules of the forum state. *North Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43 (2d Cir. 1999) (citing *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989)); *Carroll v. LeBoeuf, Lamb, Green & MacRae, L.L.P.*, 392 F. Supp. 2d 621, 627 (S.D.N.Y. 2005). Therefore New York choice-of-law jurisprudence governs whether plaintiffs' fraudulent conveyance claims should be pleaded under New York or Delaware law.

As an initial matter, defendants argue that Delaware law should apply because the Partnership Agreement contains a clause stating that the agreement is governed by Delaware law. It is true that New York recognizes the right of contracting parties to agree to the choice of law. *Roselink Investors, L.L.C. v. Shenkman*, 386 F. Supp. 2d 209, 225 (S.D.N.Y. 2004). However, as plaintiffs note, "a contractual choice-of-law provision governs only a cause of action sounding in contract, not one sounding in tort, unless the express language of the choice-of-law provision is sufficiently broad as to encompass the entire relationship between the contracting parties." *H.S.W. Enters., Inc. v. Woo Lae Oak, Inc.*, 171 F. Supp. 2d 135, 141 n.5 (citing *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1540 (2d Cir. 1997); *Turtur v. Rothschild Registry Int'l*, 26 F.3d 304, 309– 10 (2d Cir. 1994)).

The choice-of-law provision in the Sterling Watters Partnership Agreement states: "This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware." (Partnership Agreement ¶ 10.1, FAC Ex. A.) In *H.S.W. Enterprises*, broad choice-of-law clauses that apply to disputes "arising out of or relating to" the contract distinguished from narrow clauses that simply apply to the construction of the contract and dictate under what law the agreement will be "construed." 171 F. Supp. 2d at 141 n.5. Predictably, the parties dispute whether the choice-of-law provision is a broad or narrow one. In *Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc.*, 414 F.3d 325, 335 (2d Cir. 2005), the Second Circuit construed a choice-of-law provision almost identical to the one at issue here: "This Agreement will be governed by and construed in accordance with the laws of the State of New York." *Id.* at 332. In determining the scope of the provision, the Second Circuit discussed the leading New York

8

case on the scope of choice-of-law clauses, *Knieriemen v. Bache Halsey Stuart Shields, Inc.*, 427 N.Y.S.2d 10 (N.Y. App. Div. 1980), *overruled on other grounds, Rescildo v. R.H. Macy's*, 594 N.Y.S.2d (N.Y. App. Div. 1993)), which involved a similar provision that read: "This contract shall be governed by the laws of the State of New York." 427 N.Y.S.2d at 12. In that case, the Appellate Division held that it was not broad enough to reach tort claims. *Id.* Following *Knieriemen*, the Second Circuit in *Finance One* found the relevant choice-of-law provision inapplicable to the setoff claims alleged by plaintiff, because they did not arise from the contract. 414 F.3d at 335–36. While plaintiffs' tort claims for fraudulent conveyance clearly bear a relationship to transactions made under the terms of the Partnership Agreement, they are incidental to that relationship. Hence, as in *Finance One*, the choice-of-law provision at issue does not compel the application of Delaware law to this action.

Turning to the application of New York's choice-of-law rules, "[t]he first step . . . is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *In the Matter of Allstate Ins. Co.*, 613 N.E.2d 936 (N.Y. 1993). New York has adopted the Uniform Fraudulent Conveyance Act ("UFCA"), and is one of only five jurisdictions to have done so. *See* N.Y. Debt. & Cred. Law Ch. 12, Art. 10, Refs & Annos; N.Y. Debt. & Cred. Law §§ 270–81. In 1996, Delaware became one of forty-two jurisdictions to adopt the Uniform Fraudulent Transfers Act ("UFTA"), which was drafted as a successor to the UFCA in 1983. *See* 6 Del. Code Subt. II, Ch. 13, Refs & Annos; Del. Code Ann. tit. 6 §§ 1301–11. While the UFCA and UFTA are substantially similar, there are differences between the two that may eventually prove relevant to plaintiffs' claims in this litigation. *Compare, e.g.*, Del. Code Ann. tit. 6 § 1308 (providing

good faith on part of transferee or exchange of reasonably equivalent value as a defense to intentional fraudulent conveyance under § 1304(a)(1), as distinguished from constructive fraudulent conveyance), *with* N.Y. Debt. & Cred. Law § 276 (providing that every conveyance with actual intent to defraud present or future creditors is fraudulent, irrespective of transferee's good faith (or lack thereof) or exchange of fair consideration). Since there is indeed a conflict between New York and Delaware fraudulent conveyance law, the Court must determine, under New York choice-of-law principles, which law is applicable.

Typically where there is a conflict of law in cases involving tort claims, "New York applies an 'interest analysis' to identify the jurisdiction that has the greatest interest in the litigation based on the occurrences within each jurisdiction, or contacts of the parties with each jurisdiction, that relate to the purpose of the particular law in conflict." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc. of Am. Secs, LLC*, --- F. Supp. 2d ----, 2006 WL 2053326, at *14 (S.D.N.Y. July 20, 2006) (internal quotation marks and citation omitted). When the law is one which regulates conduct, such as fraudulent conveyance statutes, *see GFL Advantage Fund, Ltd. v. Colkitt*, 03 Civ. 1256, 2003 WL 21459716, at *3 (S.D.N.Y. June 24, 2003), "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders," *Pension Comm.*, 2006 WL 2053326, at *14 (quoting *GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 384 (2d Cir. 2006). "A tort occurs in 'the place where the injury was inflicted,' which is generally where the plaintiffs are located." *Id.* (quoting *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 292 (S.D.N.Y. 2001)).

10

Courts may still apply the interest analysis even when, as here, a defendant invokes the "internal affairs doctrine." *Id.* This doctrine generally "recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands." *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982). "However, in certain circumstances 'application of the local law of some other state is required by reason of the overriding interest of that other state in the issue to be decided.'" *Stephens v. Nat'l Distillers & Chem. Corp.*, 91 Civ. 2901 (JSM), 1996 WL 271789, at *4 (S.D.N.Y. May 21, 1996) (quoting Restatement (Second) of Conflict of Laws § 302, comment b (1971)). As a result, "the New York Court of Appeals has rejected 'any automatic application of the so-called 'internal affairs' choice-of-law rule.'" *Id.* (quoting *Greenspun v. Lindley*, 330 N.E.2d 79, 81 (N.Y. 1975)).

In this case, application of the New York interest analysis test reveals that New York's interest in seeing its fraudulent conveyance law applied outweighs the interest of the Partnership in having its internal relationships governed by the law under which it is organized, especially in light of the fact that plaintiffs, though limited partners, are suing in their capacities as tort creditors. The alleged torts largely occurred in New York; all plaintiffs and the vast majority of the false profit defendants are domiciled in New York. None are domiciled in Delaware. In light of the foregoing, and considering the strong interest New York has in seeing its law applied when one of its domiciliaries alleges it has been defrauded, *see, e.g.*, *Marenyi v. Packard Press Corp.*, 90 Civ. 4439 (CSH), 1993 WL 227704, at *3 (S.D.N.Y. June 21, 1993) (M.J. Katz), the Court finds that New York law

11

has a strong interest in seeing its fraudulent conveyance statutes applied, and declines to apply the internal affairs doctrine to this claim. *See Stephens*, 1996 WL 271789, at *4 (citing *Norlin v. Rooney, Pace Inc.*, 744 F.2d 255, 263–64 (2d Cir. 1984) (rejecting use of internal affairs doctrine in matter of corporate governance of Panamanian corporation where public policy of New York weighed in favor of application of New York law) (parenthetical language in original)).

    2. Plaintiffs Have Creditor Standing Under New York Debtor and Creditor Law.

       As noted above, fraudulent conveyance under New York law is governed by the New York UFCA, N.Y. Debt. & Cred. Law §§ 270–81. "The UFCA 'is a set of legal rather than equitable doctrines, whose purpose is not to provide equal distribution of a debtor's estate among creditors, but to aid specific creditors who have been defrauded by the transfer of a debtor's property.'" *A.J. Heel Stone, L.L.C. v. Evisu Int'l, S.R.I.*, 03 Civ. 1097 (DAB), 2006 WL 1458292, at *3 (S.D.N.Y. May 25, 2006) (quoting *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 634 (2d Cir. 1995)).  In order to bring a cause of action for fraudulent conveyance, the plaintiff must be a creditor of the transferor of the alleged fraudulent conveyance. *See* N.Y. Debt. & Cred. Law §§ 270–81.  A creditor is defined as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." *Id.* § 270.  Under New York's broad definition of "creditor," one who has a right to maintain a tort action but has not recovered judgment at the time of the transfer is a creditor, *Marcus v. Kane*, 18 F.2d 722, 723 (2d Cir. 1927), and "it is now accepted that the relationship of debtor and creditor [in tort cases] arises the moment the cause of action accrues," *Shelly v. Doe*, 671 N.Y.S.2d 803, 805 (N.Y. App. Div. 1998).

Plaintiffs here are tort creditors of the Partnership by virtue of their claims against the defrauding defendants in the pending action, and therefore have standing within the meaning of the New York Debtor and Creditor Law to avoid fraudulent transfers made by the Partnership.

3. Plaintiffs Have Adequately Pleaded Their Claims for Fraud under Rule 9(b).

Moving defendants argue that plaintiffs have not pleaded fraud with particularity under Rule 9(b) because of their failure to identify the amount and timing of each alleged fraudulent transfer to the false profit defendants.

As noted, plaintiffs bring claims for fraudulent conveyance under New York Debtor and Creditor Law sections 273, 274, 275, as well as section 276. In order to state a claim for fraudulent conveyance under New York Debtor and Creditor Law §§ 273, 274, 275, a plaintiff must allege that there is a conveyance without fair consideration and that (1) the transferor is insolvent at the time of the conveyance or will be rendered insolvent by the transfer in question (§ 273); or (2) as a result of the transfer in question, the transferor is left with unreasonably small capital to conduct its business (§ 274); or (3) as a result of the transfer in question, the transferor intends or believes that it will incur debt beyond its ability to pay (§ 275). N.Y. Debt. & Cred. Law §§ 273–75. Because intent to defraud is not an element under these provisions, such claims are not subject to Rule 9(b)'s heightened pleading requirements. *Sec. Inv. Prot. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 319 (Bankr. S.D.N.Y. 1999); *see also A.J. Heel Stone*, 2006 WL 1458292, at *3 n.3; *Eclaire Advisor Ltd. as Trustee to Daewoo International (America) Corp.*, 375 F. Supp. 2d 257, 268–69 (S.D.N.Y. 2005) (noting these sections of New York law deal with constructive fraud, which is not the kind of fraud to which Rule 9(b) applies) (citations

omitted). Rather, pleading fraudulent conveyance under New York Debtor and Creditor Law §§ 273, 274, 275, requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). There is no argument that plaintiffs' pleadings fail to meet this standard.

Section 276 of New York Debtor and Creditor Law, however, states that "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." N.Y. Debt. & Cred. Law § 276. "To prove actual fraud under § 276, a creditor must show intent to defraud on the part of the transferor. Where actual intent to defraud is proven, the conveyance will be set aside regardless of the adequacy of the consideration given." *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005) (internal citations and quotation marks omitted). Because intent to defraud is an element under section 276 a party seeking to set aside a fraudulent conveyance under this section must plead with the particularity required by Fed. R. Civ. P. 9(b). *See Atlanta Shipping Corp., Inc. v. Chemical Bank*, 818 F.2d 240, 251 (2d Cir. 1987). "However, because direct proof of fraudulent intent is difficult to obtain, such intent may be inferred from circumstantial evidence, such as the inadequacy of consideration received, the close relationship between the parties to the transfer, information that the transferor was [made] insolvent by the conveyance, suspicious timing of transactions or existence of pattern after the debt had been incurred or a legal action against the debtor had been threatened, or the use of fictitious parties." *A.J. Heel Stone*, 2006 WL 1458292, at *3 (citing *Eclaire Advisor Ltd.*, 375 F. Supp. 2d at 268–69 (calling these types of inferences "badges of fraud")); *see also Fromer v. Yogel*, 50 F. Supp. 2d

14

227, 247 (S.D.N.Y. 1999) ("Under N.Y. DCL § 276, [fraudulent] intent need not be proven by direct evidence but may be inferred (a) where the transferor has knowledge of the creditor's claim and knows that he is unable to pay it; (b) where the conveyance is made without fair consideration; or (c) where the transfer is made to a related party.") (internal quotation marks omitted). Plaintiffs' complaint adequately pleads fraudulent intent on the part of the transferor—namely, the defrauding defendants—who are alleged elsewhere in the complaint to be perpetrators of a Ponzi scheme. In such cases, courts have found that the debtor's intent to hinder, delay or defraud is presumed to be established. *See In re Manhattan Investment Fund Ltd.*, 310 B.R. 500, 505 (Bankr. S.D.N.Y. 2002) (citing cases holding that debtor operating a Ponzi scheme presumed to have made transfers with fraudulent intent); *see also Quilling v. Stark*, 05 Civ. 1976, 2006 WL 1683442, at \*2 (N.D. Tex. June 19, 2006) (finding alleged Ponzi scheme makes transfer of investor funds fraudulent as a matter of law, and claim for fraudulent transfer adequately pleaded under Rule 9(b), and further noting that additional information regarding the transfers is peculiarly within the knowledge of the defendants and therefore less detail is required in complaint); *Terry v. June*, 432 F. Supp. 2d 635, 639–40 (W.D. Va. 2006) ("One can infer an intent to defraud future undertakers from the mere fact that a debtor was running a Ponzi scheme. Indeed, no other reasonable inference is possible. A Ponzi scheme cannot work forever. The investor pool is a limited resource and will eventually run dry. The perpetrator must know that the scheme will eventually collapse as a result of the inability to attract new investors. The perpetrator nevertheless makes payments to present investors, which, by definition, are meant to attract new investors. He must know all along, from the very nature of his activities, that investors at the end of the line will lose their money.

Knowledge to a substantial certainty constitutes intent in the eyes of the law . . . and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them."); *S.E.C. v. Cook*, 00 Civ. 272, 2001 WL 256172, at *3 (N.D. Tex. Mar. 8, 2001) ("[W]hen [a person running a Ponzi scheme] takes incoming funds and transfers them to early investors and brokers, he is making such transfers with the actual intent to hinder, delay or defraud later investors and creditors." (citations omitted)). As such, plaintiffs' claims under section 276 are pleaded with particularity and may not be dismissed under Rule 9(b).

### 3. Plaintiffs' Claims Are Premature Absent an Accounting.

Although, as discussed in detail to this point, plaintiffs' claims for fraudulent conveyance are well pleaded and potentially meritorious, these claims are premature because there has not been an accounting. Both New York and Delaware follow the common law rule that a pre-suit accounting is a condition precedent to maintaining an action at law between partners, and, as such, there is no material conflict of law. Because the parties have briefed this issue with reference to both New York and Delaware case law, some discussion of both states' jurisprudence necessarily follows. However, if there were discrepancies between New York and Delaware law, Delaware law would be applicable under the "internal affairs doctrine." Whether a pre-suit accounting is a condition precedent to an action at law by one limited partner against another is inarguably a matter peculiar to governing the relationships among partners. Therefore it should be resolved with reference to the law of the state under which the partnership is organized. *See Edgar*, 457 U.S. at 645; *see also discussion supra*.

16

The accounting rule was transported to the United States from England, where separate courts existed for equity and law. The rule has been stated as followed: "It is the universally accepted rule that, in the absence of statutory permission, or express promise, or fraud, an action ex contractu at law, as distinguished from an action in equity, is not maintainable between partners with respect to partnership transactions, unless there has been accounting or settlement of the partnership affairs." K.A. Drechsler, *Actions at Law between Partners and Partnerships*, 168 A.L.R 1088 (1947). While some jurisdictions no longer follow this rule, *see, e.g.*, *Sertich v. Moorman*, 783 P.2d 1199 (Ariz. 1989) (en banc) (abolishing the pre-suit accounting requirement in Arizona), it has not been completely abandoned in either New York or Delaware, *see 1056 Sherman Ave. Assocs. v. Guyco Const. Corp.*, 690 N.Y.S.2d 657 (N.Y. App. Div. 1999) (noting that where there are many factual issues to be resolved in a cause of action for breaches of contract and fiduciary obligations between partners, such controversies are "aptly governed by the well established rule that an action at law may not be maintained by one partner against another for any claim arising out of the partnership until there has been a full accounting, except where the alleged wrong concerns a partnership transaction which may be determined without an examination of partnership accounts," and therefore dismissing the claims as premature); *Mack v. White*, 165 A. 150, 150 (Del. 1933) ("[T]he general rule is that an action at law, as distinguished from an action in equity, is not maintainable between partners with respect to partnership transactions unless there has been an accounting or settlement of the partnership affairs. The existence of this general rule is so well established that it should require no citation of authorities.").

17

In the absence of an accounting, partners may sue each other at law in only limited circumstances. Exceptions exist when there has been an adjustment, settlement, or balance struck and a promise to pay so that no complex accounting is required, or where only one fully closed but unadjusted transaction is involved. *See* 15A N.Y.Jur.2d § 1506 (1996); *Agrawal v. Razgaitis*, 539 N.Y.S.2d 496 (N.Y. App. Div. 1989) (stating that partners generally cannot sue each other at law unless there is an accounting, prior settlement, or adjustment of the partnership affairs, but partner may maintain an action at law against a copartner when no complex accounting is required or when only one transaction is involved which is fully closed but unadjusted); *Mack*, 165 A. at 151 ("One of these exceptions is that when the partners agree to entirely withdraw and segregate certain items or particulars from the partnership account and settle it between themselves and liabilities are assumed by this settlement that then the enforcement of these liabilities may be at law regardless of the unsettled account between the parties."). In this case, as discussed above, plaintiffs are tort creditors of the Partnership as a result of their claims of fraud against the defrauding defendants; however plaintiffs' claims are inextricably related to their status as limited partners in the Partnership, and the claims for fraudulent conveyance against the false profit defendants clearly implicate partnership transactions. Therefore, on first blush plaintiffs' claims appear to fall within the scope of the accounting rule, and do not appear to fall within any exceptions.

Plaintiffs argue that the rule requiring an accounting only applies to derivative actions filed on behalf of a partnership, and not to direct claims asserting a partner's individual rights such as plaintiffs' fraudulent conveyance claims. However, this position is not supported by the case law cited by plaintiffs. The primary case cited by plaintiffs to

18

support the proposition that an accounting is only a prerequisite in a derivative suit does not even discuss the issue of an accounting and simply decides whether the claim at issue was in fact direct or derivative. *Litman v. Prudential-Bache Props., Inc.*, 611 A.2d 12 (Del. Ch. 1992). As defendants correctly note, in *Goodwin v. MAC Resources*, 149 A.D.2d 666, 667 (N.Y. App. Div. 1989), the New York Appellate Division dismissed direct claims brought by a limited and general partner on behalf of themselves against another general partner alleging breach of fiduciary duty and breach of contract as premature because there had not yet been an accounting, prior settlement or adjustment of partnership affairs. In fact, the only direct suit that may be brought against general partners by a limited partner is an action for an accounting. *Lenz v. Assoc. Inns & Rests. Co.*, 833 F. Supp. 362, 379 (S.D.N.Y. 1993) ("It is well-settled that the only direct lawsuit against general partners that a limited partner can bring in an individual, non-representative capacity consists of an action for an accounting." (citing *Ewing v. Owens*, 441 P.2d 964 (Okla. 1968) (partner should not be heard on legal claims against co-partner until plaintiff has pursued action for an accounting); *Herrick v. Guild*, 257 A.D. 341, 342, 13 N.Y.S.2d 115, 117 (N.Y. App. Div. 1939) (stating that "suits between partners should be brought in equity, particularly for an accounting, and that an action at law may not be maintained until after an accounting and a balance struck"); *Blattberg v. Weiss*, 61 Misc.2d 564, 566, 306 N.Y.S.2d 88, 91 (N.Y. App. Div. 1969) (noting that capacity of limited partners to initiate class actions and derivative suits against general partners does not disturb settled rule regarding individual, non-representative claims) (parentheticals in original))).

Plaintiffs also argue that "the accounting rule should not be read as saying that a limited partner cannot bring an action against the partnership when the general partners

have 'disabled themselves,'" citing *Klebanow v. N.Y. Produce Exchange*, 344 F.2d 294,

298 (2d Cir. 1965) (Friendly, J.). However, *Klebanow* does not address the accounting

rule. *Klebanow* instead addresses whether section 115 of the New York Partnership Law[3]

formed a bar to a suit by limited partners on behalf of the partnership, i.e., derivatively, for

injury arising out of conduct proscribed by the federal antitrust law, and where the

partnership and liquidating partner have disabled themselves and refused to sue. *Id.* The

court held that section 115 formed no such bar. *Id.* Plaintiffs do not offer any additional

support for their argument that an exception to the accounting rule exists where the general

partners have disabled themselves from the management of the Partnership, and the Court

has found none. *Cf.* Drechsler, 168 A.L.R. 1088 ("In accordance with [the] general

statement [of the rule that an accounting is a prerequisite to recovery based upon

partnership transactions], . . . the mere dissolution of the partnership does not change the

rule that no action at law can be maintained between copartners.").

The Court recognizes that in recent years the accounting rule has fallen into relative

disrepute. *See Sertich*, 783 P.2d 1199. And, while one might question the public policy of

requiring an accounting in situations such as the one presently before the Court, as the law

presently stands an accounting remains a condition precedent to an action at law between

limited partners under Delaware law. On this point, the Court finds it particularly

noteworthy that in 2001 a Revised Uniform Limited Partnership Act ("RULPA") was

approved and recommended for adoption and enactment in all the states. Nat'l Conf. of

Comm'rs on Uniform State Laws, Uniform Limited Partnership Act (2001), *available at*

http://www.assetprotectionbook.com/final2001.pdf. The RULPA contains a provision that

---

[3] Section 115 reads: "Parties to Actions. A contributor, unless he is a general partner, is not a proper party to proceedings by or against a partnership, except where the object is to enforce a limited partner's right against or liability to the partnership." N.Y. P'ship Law § 115.

allows direct action by a limited partner against the limited partnership or another partner, with or without an accounting, if the partner can plead and prove an actual or threatened injury "that is not solely the result of an injury suffered or threatened to be suffered by the limited partnership." *Id.* § 1001. This section was derived from the Revised Uniform Partnership Act ("RUPA"), § 405(b). While Delaware has incorporated into the Delaware Revised Uniform Partnership Act the provision in RUPA that allows direct action by one partner against another in a general partnership, Del. Code. Ann. tit. 6 § 15-405(b), it has *not* adopted the provision in RULPA creating the same limited exception to the accounting rule in the case of actions between limited partners. In the absence of such statutory authority, or the applicability of a recognized exception, plaintiffs' direct claims against their co-limited partners are necessarily barred as premature for failure to first pursue an equitable action for an accounting.

## CONCLUSION

For the foregoing reasons, moving defendants' motions to dismiss [68] [98] are GRANTED without prejudice. Inasmuch as it appears plaintiffs have a valid cause of action for an accounting, plaintiffs are granted leave to amend to add all limited partners to the accounting cause of action presently asserted only against defrauding defendants.

SO ORDERED.

Dated: New York, New York
September 25, 2006

Richard J. Holwell
United States District Judge

21